**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MIGUEL LEON,** | : | |
| **Plaintiff** | : | **Civil Action No. 3:17-CV-2150** |
| **v.** | : | |
| **CREDIT ONE BANK, N.A,** | : | **(JUDGE MANNION)** |
| | : | |
| **Defendant** | | |

## <u>MEMORANDUM</u>

Before the court is defendant Credit One Bank's motion to compel arbitration, (Doc. 2), pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §1, *et seq*., regarding plaintiff Miguel Leon's complaint, (Doc. 1-1). Leon alleges that Credit One violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, *et seq*., when it made multiple automated calls, some with a prerecorded voice, to his cellphone in attempts to collect an outstanding debt due on his credit card issued by Credit One. Leon alleges that the calls continued despite the fact that he withdrew his consent for Credit One to call him on his cellphone. Credit One moved to compel arbitration of Leon's TCPA claims based on the arbitration clause contained in the Cardholder Agreement that he accepted when he opened two accounts. Based on the following reasons, the court will **GRANT** Credit One's motion to compel arbitration and stay this case pending completion of arbitration.

## I.    BACKGROUND[1]

On May 10, 2016, Credit One sent Leon a written solicitation for a pre-approved credit card with a distinct reservation number of SD17XL29-9999. (Doc. 3-1). A second solicitation by Credit One was sent Leon on August 11, 2016, with a distinct reservation number of CF11-3D29-9999. (Doc. 3-1, Ex. A-1). The back pages of both solicitations contained terms and conditions applicable to the credit card, including arbitration. On May 16, 2016, Leon accepted the May 10, 2016 solicitation by completing an application online at Credit One's website and he opened a credit card account ending in 5949. On August 30, 2016, Leon accepted the August 11, 2016 solicitation and again completed the application online at Credit One's website. As such, Leon opened a second credit card account with Credit One, and this card ended in 7950. Credit One attached copies of both screen shots of the applications Leon completed as exhibits to its motion to compel.(Doc. 3-1, Exs. A-2, A-3).

The two written solicitations for a pre-approved credit card which Credit One sent Leon contained terms and conditions applicable to the credit card, including arbitration. (Doc. 3, Ex. A-1). The front of the solicitations contained the following: "By signing this Acceptance Certificate, I acknowledge I have

---

[1]The facts are derived from plaintiff's complaint as well as the exhibits submitted by the parties, and are taken as true for present purposes.

read the terms and conditions on this Acceptance Certificate and on the reverse side of the offer letter, and agree to be bound by those terms." The back of the solicitations contained following:

> **ARBITRATION**: You agree that either you or we may, without the other's consent, require that any dispute between you and us be submitted to mandatory, binding arbitration. Complete details will be in the Agreement sent with your card.

Further, the solicitations provided:

> If I am approved, my card(s) will be issued and I agree to pay all charges incurred in accordance with the terms and conditions of the Cardholder Agreement, Disclosure Statement, and Arbitration Agreement ("Agreement"), which will be sent with my card. I understand that my Account will be subject to the terms and conditions of the Cardholder Agreement, Disclosure Statement, and Arbitration Agreement sent with my card . . .

After processing Leon's applications, Credit One issued two credit cards to Leon and mailed them to him, along with a copy of the Visa/MasterCard Cardholder Agreement, Disclosure Statement and Arbitration Agreement, ("Cardholder Agreement"). Credit One attached a copy of the Cardholder Agreement as an exhibit. (Doc. 3-1, Ex. A-4). Leon's Cardholder Agreement for his accounts provided: "You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration."

The Cardholder Agreement also provided: **Arbitration Agreement**: "The

Arbitration Agreement provided to you with this Agreement governs the enforcement by you and us of your and our legal rights under this Agreement."

The Cardholder Agreement further provided:

## ARBITRATION AGREEMENT

PLEASE READ THIS PROVISION OF YOUR CARD AGREEMENT CAREFULLY. IT PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY A NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT. IN ARBITRATION, YOU MAY CHOOSE TO HAVE A HEARING AND BE REPRESENTED BY COUNSEL.

Additionally, the Cardholder Agreement provided:

**Agreement to Arbitrate**:
You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration. This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1 et seq., and (to the extent State law is applicable), the State law governing the Card Agreement.

The claims covered by the Cardholder Agreement which were subject to arbitration broadly included:

4

disputes relating to the establishment, terms, treatment, operation, handling, limitations on or termination of your account; any disclosures or other documents or communications relating to your account; any transactions or attempted transactions involving your account, whether authorized or not; billing, billing errors, credit reporting, the posting of transactions, payment or credits, or collections matters relating to your account; services or benefits programs relating to your account, whether or not they are offered, introduced, sold or provided by us; advertisements, promotions, or oral or written statements related to (or preceding the opening of) your account, goods or services financed under your account, or the terms of financing; the application, enforceability or interpretation of this Agreement, including this arbitration provision; and any other matters relating to your account, a prior related account or the resulting relationships between you and us. Any questions about what Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.

The arbitration provision further applies to all claims based on any theory of law including statute, tort (including fraud or any intentional tort), and common law based upon any allegation of fact, including an alleged act, inaction, omission, suppression, representation, statement, obligation, duty, right, condition, status or relationship.

Leon did not activate the credit card ending in 5949, and the card was not used. On September 26, 2016, Leon activated the credit card ending in 7950 and he started to use the card by incurring charges on it. Leon also made payments on this account. Credit One attached its monthly billing statements sent to Leon regarding the 7970 card as exhibits. (Doc. 3-1, Exs.

A-5, A-6). When Leon started to use the card ending in 7950, he accepted the terms contained in the Cardholder Agreement, including the arbitration provision.

Leon commenced this action on October 20, 2017, in the Court of Common Pleas of Luzerne County, Pennsylvania. (Doc. 1, Ex. A). Leon states that, pursuant to a provision in the credit card Agreement, he initially provided Credit One with consent to contact him on his cellphone regarding his account using an automatic telephone dialing system, and artificial voice or a prerecorded voice. (Doc. 1, Ex. A). Leon alleges that on February 24, 2017, he contacted Credit One and advised it that he did not want to receive any more phone calls on his cellphone regarding his account. Leon alleges that despite the fact that he withdrew his consent to calls from Credit One as permitted by the TCPA, Credit One continued to make repeated automated and pre-recorded calls to his cellphone about his account. As such, Leon alleges that he is entitled to statutory damages under the TCPA, 47 U.S.C. §227(b)(3), in the amount of $500 for each call Credit One made to his cellphone.

Credit One removed this case to federal court on November 22, 2017. (Doc. 1).

On November 29, 2017, Credit One filed its motion to compel arbitration under the FAA and the Cardholder Agreement containing an arbitration

6

clause. Credit One also moves to stay the proceedings in this court until the arbitration is completed. Credit One simultaneously filed its brief in support with exhibits. (Doc. 3, Doc. 4). After being granted an extension of time, Leon filed his brief in opposition with exhibits. (Doc. 7). Credit One filed a reply brief on January 8, 2018. (Doc. 8).

## II.     STANDARD OF REVIEW

When it is clear from the face of the pleading and its supporting documents that a party's claims "are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." Guidotti v. Legal Helpers Debt Resolution, LLC, 716 F.3d 764, 776 (3d Cir. 2013). In this case, it is appropriate to analyze Credit One's motion pursuant to the provisions of Fed.R.Civ.P. 12(b)(6) since the determination of whether Leon's claims are subject to arbitration can be made based on his complaint and the credit card Agreement referenced therein and submitted by Credit One. Thus, the court finds that arbitrability is facially established. Further, both parties submitted exhibits and neither party has requested that they be permitted discovery regarding arbitrability.

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. *Id.*

The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id.* Furthermore, in order satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See* Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit

8

to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

## III.    DISCUSSION

Credit One has filed the instant motion to compel arbitration and stay this case, arguing that the Cardholder Agreement specifically contained a valid arbitration clause. Credit One argues that all of Leon's claims are clearly within the scope of the binding arbitration clause. Therefore, Credit One seeks the court to grant its motion to compel arbitration and to stay these proceedings pending the conclusion of the arbitration. The Cardholder Agreement specifically included an arbitration clause mandating arbitration of any matters relating to the account including collections matters. Thus, Leon's claims raised in his complaint are clearly covered by the arbitration provision

of the Cardholder Agreement.

The plaintiff further agreed that any controversy relating to his account with Credit One would be settled by arbitration under the Federal Arbitration Act ("FAA"), [9 U.S.C. §1,](#) *et seq*. In Bey v. Citi Health Card, 2017 WL 2880581 (E.D.Pa. July 6, 2017), the court considered a nearly identical credit card contract as in the present case containing an agreement to arbitrate plaintiff's claims alleging violations of the TCPA and found that defendant could assert its right to compel arbitration with respect to claims covered by the contract.

The initial question of whether the parties validly agreed to arbitrate is presumed to be a question for the court unless the parties clearly and unmistakably indicate otherwise. *[Guidotti Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 773 (3d Cir. 2013)](#)*.

In considering Credit One's motion to compel arbitration, both Federal and Pennsylvania state law strongly favor the enforcement of arbitration provisions.[2] *See* [Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009)](#) ("It is well established that the FAA reflects a 'strong

---

[2]Credit One moves to compel arbitration pursuant to the FAA, and indicates that the FAA governs the enforceability of the arbitration provision in this case. The court notes that the FAA and the Pennsylvania Uniform Arbitration Act determine the scope of arbitration provisions similarly. *See* [State Farm Mut. Auto. Ins. Co. v. Coviello, 233 F.3d 710, 713 n.1 (3d Cir. 2000)](#) ("[T]here is no meaningful difference between federal and Pennsylvania law when reviewing the scope of an arbitration clause.").

federal policy in favor of resolution of disputes through arbitration.'" (quoting Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003)); Dodds v. Pulte Home Corp., 909 A.2d 348, 351 (Pa.Super.Ct. 2006) ("It is hornbook law that Pennsylvania favors the enforceability of agreements to arbitrate." (citing Quiles v. Fin. Exch. Co., 897 A.2d 281, 285 (Pa.Super.Ct. 2005)). Contracts with an arbitration clause are treated with a "presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)).

Applying either Federal or Pennsylvania state law, courts conduct the same two-part inquiry to determine the enforceability of arbitration provisions. First, the court must determine whether "a valid agreement to arbitrate exists," and, second, whether "the particular dispute falls within the scope of the agreement." Kirleis, 560 F.3d at 160; *see also* Messa v. State Farm Ins. Co., 641 A.2d 1167, 1168 (Pa.Super.Ct. 1994). "A party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration."

Alexander, 341 F.3d at 263–64; *see also* 9 U.S.C. §§3, 4.

Initially, the court must determine whether a valid agreement to arbitrate exists. "Courts look to ordinary state law principles of contract formation" to make this determination. Bey, 2017 WL 2880581, \*4 (citing Alexander, 341 F.3d at 264). As such, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [Section] 2." Id. (quoting Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687 (1996).

Under Pennsylvania law, "[t]he basic elements of an enforceable contract are three: the parties must reach a mutual understanding, exchange consideration, and delineate the terms of the bargain with sufficient clarity. In re 400 Walnut Associates, L.P., 454 B.R. 60, 70 (E.D. Pa. 2011) (citing Foreman v. Chester–Upland School District, 941 A.2d 108, 114 (Pa.Cmwlth. 2008). "[T]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and consideration." Id. (quoting Restatement (Second) of Contracts §17(1) (1979)). The issue of whether a contract exists is an issue generally that the court must decide prior to staying an action and ordering arbitration. Allstate Insurance Company v. Toll Brothers, Inc., 171 F.Supp.3d 417, 423 (E.D.Pa. 2016).

The court finds that a valid agreement to arbitrate exists in this case since all of the three elements are met based on the facts of this case as

discussed above.

Next, the court considers whether Leon's claims fall within the scope of the arbitration clause. Credit One argues that Leon's claims are subject to mandatory arbitration, since the Cardholder Agreement, i.e., the credit card contract, provided that all disputes between the parties are subject to arbitration under the FAA and Leon's TCPA claims fall squarely within the Agreement. The court finds that Leon's claims under the TCPA challenging Credit One's actions fall within the arbitration clause's scope and the arbitration provision is enforceable. *See Bey, supra* (Court held that plaintiff's claims under TCPA fell within the scope of the arbitration clause in the credit card's agreement).

Thus, where the FAA applies and the parties have entered into a written agreement with an arbitration clause that encompasses the claims in dispute, the court must compel arbitration and stay the action pending its completion.

Leon does not challenge that an agreement to arbitrate exists or that his claims fall under the arbitration clause. Rather, he raises the contract defense of unconscionability which may be asserted to invalidate an arbitration clause. Leon argues that the procedural prong of unconscionability is met since the Cardholder Agreement is a contract of adhesion. He contends that the substantive prong of unconscionable is met since the arbitration clause requires the arbitrator to award Credit One its collection costs and attorney's

fees and, since the fees and costs he will be required to pay in an arbitration or to JAMS are too costly. (Doc. 7). He states that "the exorbitant costs and fees that are automatically imposed on [him] would prevent him from pursuing his claim."

"Under Pennsylvania law, the burden of establishing unconscionability lies with the party seeking to invalidate the contract, including an arbitration agreement." *Salley*, 925 A.2d at 129. "[G]enerally [courts] apply state contract principles to determine whether an arbitration agreement is unconscionable." Quilloin v. Tenet HealthSystem Phila., Inc., 673 F.3d 221, 230 (3d Cir. 2012). Like both parties, the court will examine unconscionability under Pennsylvania law as it is applicable in this case.

In Allstate Insurance Company, 171 F.Supp.3d at 430, the court explained:

> Under Pennsylvania law, "a contract or term is unconscionable, and therefore avoidable, when there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it." Salley v. Option One Mortg. Corp., 592 Pa. 323, 925 A.2d 115, 119–20 (2007) (citing Denlinger, Inc. v. Dendler, 415 Pa.Super. 164, 608 A.2d 1061, 1068 (1992)). Pennsylvania assigns the labels of "procedural" and "substantive" unconscionability to these two respective requirements. *See id.* at 119. Both must be present to find unconscionability, *see id.* at 199–20, 125; Zimmer v. CooperNeff Advisors, Inc., 523 F.3d 224, 230 (3d Cir.2008) (citing id. at 119–20), but the strength of one may outweigh the weakness of the other, *see* Quilloin v. Tenet HealthSys. Phila., Inc., 673 F.3d 221, 230 (3d Cir. 2012) (observing that in Salley,

14

the Pennsylvania Supreme Court "indicated that it might be appropriate to use a 'sliding-scale approach' so that 'where the procedural unconscionability is very high, a lesser degree of substantive unconscionability may be required'" (quoting Salley, 925 A.2d at 125 & n. 12)).

"Under Pennsylvania law, an agreement or term is unconscionable only if the term is both procedurally unconscionable and substantively unconscionable." Id. at 431. "Without a showing of both forms of unconscionability, the clause must stand." Id. (citing Zimmer v. CooperNeff Advisors, Inc., 523 F.3d 224, 230 (3d Cir. 2008). In this case, it is Leon's obligation to demonstrate the existence of both procedural and substantive unconscionability.

The court first addresses Leon's contention that the arbitration clause is procedurally unconscionable because the Cardholder Agreement is a contract of adhesion. Leon contends that the Cardholder Agreement is an adhesion contract because Credit One drafted the Agreement without any input from him and because the Agreement was provided on a take-it-or-leave-it basis. (Doc. 7 at 9).

"A contract is procedurally unconscionable where 'there is a lack of meaningful choice in the acceptance of the challenged provision[.]'" *Quillion*, 673 F.3d at 235 (quoting *Salley, 925 A.2d at 119*) (alteration in original). "Under Pennsylvania law, a contract is generally considered to be

procedurally unconscionable if it is a contract of adhesion." *Id*. However, more than a mere disparity of bargaining power is needed to find procedural unconscionability. *Id*. The court should consider factors including: "the take-it-or-leave-it nature of the standardized form of the document[,] the parties' relative bargaining positions, and the degree of economic compulsion motivating the adhering party[.]" *Id*. at 235–36 (quoting *Salley*, 925 A.2d at 125) (alteration in original) (internal quotation marks omitted).

Credit One, (Doc. 8 at 4), asserts that "[Leon] voluntarily chose to enter into two separate Cardholder Agreements with Credit One, indicating his willingness to be bound by its terms, and fails to cite the degree of economic compulsion necessary to prove procedural unconscionability." Indeed, Leon does not claim that he was in any way forced to apply twice with Credit One for two separate credit cards and to accept two Cardholder Agreements associated with those cards. When Leon received the two credit cards, he also got the Cardholder Agreement with the arbitration clause conspicuously contained therein. If he did not want to accept the terms of the Agreement, he simply did not have to use the cards. However, Leon did in fact use one of the cards and he does not contend that his use of the card was anything but voluntary and for his own benefit. The court finds that even though to use the card Leon had to accept the Cardholder Agreement's terms, drafted by Credit One, he could have declined to use the card and sought out credit cards from

other companies that did not have an arbitration clause. Nor does Leon contend that he could not obtain another credit card from a different company. He also does not contend that he did not have any other credit cards at the time. Thus, the take-it-or-leave-it nature of the cards in this case does not render the Cardholder Agreement as a contract of adhesion. The court also finds that Leon does not establish the degree of economic compulsion necessary to make the Cardholder Agreement procedurally unconscionable as a contract of adhesion. Nor does Leon address the degree of economic compulsion factor in his brief in opposition. (Doc. 7 at 8-9). *See* Glenwright v. Carbondale Nursing Home, Inc., 2017 WL 1092541 (M.D.Pa. March 23, 2017).

Despite the fact that the court finds that Leon has failed to meet his burden to show that the Cardholder Agreement is procedurally unconscionable as a contract of adhesion, the court will address whether the arbitration clause is substantively unconscionable since the court finds that the collection costs and fee provision in the Agreement is unconscionable and it will be severing these provisions as it did in the *Glenwright* case.

Leon argues that the Cardholder Agreement is substantively unconscionable based on its arbitration costs and fees provision which requires him to pay Credit One's collection costs and attorneys' fees, "including [Credit One's] in-house attorneys' costs, that [Credit One] incur[s]

17

as a result of [his] default... ." (Doc. 7 at 10) (citing Doc. 3-5 at 8). He also

states that by "the very nature of [his] claim means that he would be required

to pay [Credit One's] costs and attorney's fees." (Id.). Specifically, the "Costs"

provision of the Cardholder Agreement, (Doc. 3-5 at 8), provides as follows:

> **Costs**: If we file the arbitration, we will pay the initial filing fee. If you file the arbitration, you will pay your share of the initial filing fee, unless you seek and qualify for a fee waiver under the applicable rules of the arbitration administrator. We will reimburse you for your share of the initial filing fee if you paid it and you prevail. Except as set forth below, if there is a hearing, we will pay any fees of the arbitrator and arbitration administrator for the first day of that hearing. All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law. However, we will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is other good reason for requiring us to do so, or we determine there is good cause for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, except that (a) the arbitrator shall apply any applicable law in determining whether a party should recover any or all expenses from another party, (b) **the arbitrator shall require you to pay us collection costs and attorneys' fees, including our in-house attorneys' costs, that we incur as a result of your default, as set forth in the Card Agreement** and (c) the arbitrator may assess attorneys' fees and costs against a party upon a showing by the other party that the first party's claims(s) or conduct was frivolous or pursued in bad faith or solely for purpose of multiplying the arbitration proceedings unreasonably or vexatiously.

(Emphasis added).

Contrary to Leon's assertion, (Doc. 7 at 6-7), that "the [arbitration]

agreement would require [him] to bear all costs associated with the

18

arbitration, and to also be responsible for all of [Credit One's] attorney's fees" even if he prevails, the "Costs" provision states that Credit One will pay the filing fee since it will be initiating the arbitration and that it will pay all fees of the first day of an arbitration hearing. The provision then basically states that all other fees will be shared between the parties, but Credit One "will advance or reimburse filing fees and other fees if the [arbitrator] determines there is other good reason for requiring us to do so, or we determine there is good cause for doing so." The provision also states that "[e]ach party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails." However, the provision then allows for fee shifting and states that while each party must bear their own fees and costs, "the arbitrator shall apply any applicable law in determining whether a party should recover any or all expenses from another party."

However, the "Costs" provision also requires that Leon pay Credit One's collection costs and attorney's fees, in addition to his obligation to pay his share of the AAA fees. Indeed, Leon notes that he advised Credit One's counsel that he would consent to arbitration if it "would simply agree to waive the requirement that [he] pay [Credit One's] costs and attorney's fees." However, Leon notes that Credit One's counsel refused to waive the provision. (Id at 10-11 n. 3). In any event, the court will sever this collection costs and fees provision as substantively unconscionable.

"Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." Curtis v. Cintas Corp., 229 F.Supp.3d 312, 317 (E.D.Pa. 2017) (citations omitted). "An arbitration agreement cannot be construed as substantively unconscionable where it 'does not alter or limit the rights and remedies available to [a] party in the arbitral forum.'" Id. (citation omitted).

In Glenwright, 2017 WL 1092541, *7, this court stated:

> "Provisions requiring parties to be responsible for their own expenses, including attorneys' fees, are generally unconscionable because restrictions on attorneys' fees conflict with federal statutes providing fee-shifting as a remedy." *Id.* at 230–231(collecting cases). This generalization is only applicable when the provision requires the litigant to bear legal fees and costs regardless of the outcome of the arbitration and disallows fee-shifting. *See id.* at 231; *Alexander v. Anthony Int'l, L.P.,* 341 F.3d 256, (3d Cir. 2003) (fee provision substantively unconscionable under Virgin Islands law where the agreement substantially limited the available remedies to plaintiffs)*; Spinetti,* 324 F.3d at 214–15 (addressing a provision that required the litigant to bear costs regardless of the outcome of arbitration). If the agreement is ambiguous with respect to the arbitrator's ability to fashion an appropriate award, this ambiguity must be addressed by the arbitrator in the first instance. *See Quillion,* 673 F.3d at 231. In *Quillion*, the Third Circuit found an ambiguity with respect to the employee's ability to obtain fees as a remedy where explicit provisions in the parties' agreement contradicted each other as to the availability or non availability of fees and costs. *Id*.

In finding the fee provision unconscionable in *Glenwright*, *id*., this court

concluded:

> Here, the arbitration agreement at issue unambiguously provides that the employee will bear his or her own legal costs and half of the costs of arbitration. It states so in two instances. Unlike the agreement in *Quillion*, there is no provision that states that all remedies available in a court of law would be available to Glenwright in arbitration, or some similar provision to that effect. Thus, there is no ambiguity in the language of the agreement and it is clear that Glenwright must bear her respective legal fees and half the costs of arbitration. This is so despite the existence of a fee-shifting remedy available to her in this court. This is clearly unconscionable under *Quillion*. *See* 673 F.3d at 230–31.

The court finds in the present case the requirement in the "Costs" provision of the Cardholder Agreement that Leon must pay Credit One's collection costs and attorneys' fees it incurred as a result of Leon's default is substantively unconscionable, and it will sever this requirement of the provision. The remainder of the "Costs" provision is not unconscionable since it allows for fee-shifting as a remedy unlike the arbitration agreement in the *Glenwright* case. Despite the fact that the court finds the stated portion of the "Costs" provision unconscionable, it finds that this portion is severable. "In Pennsylvania, where an essential term in a contract is illegal, the entire contract is unenforceable." Id. (citing *Spinetti*, 324 F.3d at 214 (citing *Deibler v. Chas. H. Elliott Co.*, 81 A.2d 557, 560–61 (Pa. 1951)). This court in *Glenwright*, *id*., then explained as follows:

> In *Spinetti v. Service Corporation International*, the Third Circuit, applying Pennsylvania law, explained that a clause can be

stricken from an agreement so long as it does not constitute "an essential part of the agreed upon exchange." *Id*. (quoting RESTATEMENT (SECOND) OF CONTRACTS §184(1) (1981)). This is true even if there is no specific clause in the agreement allowing for severance of the agreement. *Id*. at 221–22. The *Spinetti* court affirmed the district court's decision to sever unenforceable fee provisions in an employment arbitration agreement. *Id*. The court found that the essence of the agreement was to settle employment disputes, and not the language regarding fees. *Id*. at 214. "[P]rovisions regarding payment of arbitration costs and attorney's fees represent only a part 'of [the] agreement and can be severed without disturbing the primary intent of the parties to arbitrate their disputes.'" *Id*. (quoting the district court) (alteration in original).

In line with *Spinetti*, the court is able to sever the fee provisions in the parties' arbitration agreement without disturbing the intent of the parties to arbitrate their employment-related disputes. Thus, any argument that the unconscionable fee provision renders the entire agreement unconscionable is legally unsound. The court will enforce the agreement without the fee provisions and allow the parties to arbitrate their claims.

Similarly, in the instant case, the court will enforce the Cardholder Agreement without the collection costs and fee requirement contained in the "Costs" provision of the Cardholder Agreement at (b), (Doc. 3-5 at 8), and allow the parties to arbitrate Leon's TCPA claims. *See Glenwright, supra*.

Finally, Leon states, (Doc. 7 at 17), that a "bear all costs" provision in an arbitration clause of credit card agreement is substantively unconscionable if it prevents him from pursuing his rights due to his inability to pay the costs of arbitration. He cites to Antkowiak v. TaxMasters, 455 Fed.Appx. 156, 160-61 (3d Cir. Dec. 22, 2011). In *Antkowiak*, the Third Circuit stated that a "bear

all costs" provision "is only substantively unconscionable if it prevents [plaintiff] from vindicating his rights in the arbitral forum", and that "[t]o make this showing, [ ] a party challenging an expense provision [must] show (1) the projected costs that would apply and (2) the party's inability to pay those costs." Id. (citations omitted). To make such a showing, Leon's counsel submitted his Affidavit, (Doc. 7-1), averring to the costs of arbitration and his belief that "[Leon] would likely be responsible for at least $3,900 in fees to pursue his claim" in arbitration. Leon has also submitted his December 21, 2017 Affidavit, (Doc. 7-2), in which he averred that his employment as a FedEx driver would end in December and that he would then be actively seeking new employment. There is no further indication in the record if in fact Leon's employment ended in December 2017, or if he was able to obtain new employment. Leon avers that he "would not be able to pay total arbitration costs of $3,900.00 or more" which his counsel estimates would be his costs. He also avers that he would not be able to pursue this case if he was required to pay the costs of an arbitration proceeding "absent some extraordinary unforeseen circumstance by which [his] income prospects change dramatically." Of course, Leon's alleged inability to pay his share of the arbitration costs is based entirely on the assumption that Leon was not retained by FedEx and, that he has not obtained new employment and will not be able to obtain new employment in the foreseeable future. Additionally, as

23

Credit One points out, (Doc. 8 at 10), "[i]f Credit One brings a collection action against Plaintiff for breach of the Cardholder Agreement in the future, whether it be in arbitration or a separate action, it is entitled to payment of its collection costs." Thus, as Credit One contends, Leon's alleged inability to pay the costs of arbitration is speculative in nature. Leon has failed to prove beyond speculation his inability to pay his share of the costs of arbitration.

In any event, the Third Circuit in *Antkowiak* addressed a "bear all costs" provision in an arbitration clause and there is no such provision in the instant arbitration clause. Rather, the type of arbitration clause in this case, which requires the parties to bear their own attorney's fees, costs, and expenses, was addressed by the Third Circuit in Nino v. Jewelry Exchange, Inc., 609 F.3d 191 (3d Cir. 2010). In *Nino*, *id.* at 302, the Third Circuit agreed with the district court that "the arbitration agreement's requirement that the parties bear their own attorney's fees, costs, and expenses is substantively unconscionable." The Court in *Nino*, *id.*, stated that "[p]rovisions in arbitration clauses requiring parties to bear their own attorney's fees, costs, and expenses work to 'the disadvantage of an employee needing to obtain legal assistance'" and, that "[s]uch provisions also undermine the legislative intent behind fee-shifting statutes ...." (citations omitted). The Court in *Nino*, *id.*, concluded that "[t]he arbitration agreement's restriction on the arbitrator's ability to award attorney's fees, costs, and expenses is substantively

24

unconscionable."

In this case, the "Costs" provision of the Cardholder Agreement, (Doc. 3-5 at 8), provides in pertinent part: "[Credit One] will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is other good reason for requiring us to do so, or we determine there is good cause for doing so." It then provides: "Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, except that (a) the arbitrator shall apply any applicable law in determining whether a party should recover any or all expenses from another party[.]" Thus, in this case the arbitrator unambiguously does have the ability to award Leon attorney's fees, costs, and expenses from Credit One if he/she determines they are warranted. While the provision requires Leon to bear his own legal fees and costs regardless of the outcome of the arbitration, it does allow the arbitrator flexibility to utilize fee-shifting as a remedy. As such, the court finds that the Cardholder Agreement's requirement that the parties bear their own attorney's fees, costs, and expenses is not substantively unconscionable in this case.

Thus, the court will only sever as substantively unconscionable the requirement in the Cardholder Agreement that Leon pay Credit One's collection costs and attorney's fees, i.e., the requirement of the "Costs" provision of the Cardholder Agreement that states "(c) the arbitrator shall

require you to pay us collection costs and attorneys' fees, including our in-house attorneys' costs, that we incur as a result of your default, as set forth in the Card Agreement."

## IV.    CONCLUSION

As such, the court will **GRANT** Credit One's motion to compel arbitration, (Doc. 2), and it will **STAY** this case pending the completion of arbitration. Further, the court will **ADMINISTRATIVELY CLOSE** this case until the arbitration is resolved. The court will also direct the parties to file quarterly status reports with the court regrading the status of the case. An appropriate order shall be issued.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: January 26, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2017 MEMORANDA\17-2150-01.wpd